James J. Davis, Jr., AK Bar No. 9412140
Aneliese Palmer, AK Bar No. 2201001
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: jdavis@njp-law.com
Email: apalmer@njp-law.com

Attorneys for Plaintiff

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| JESSICA LAMBLEZ,<br><br>    Plaintiff,<br><br>vs.<br><br>UNIVERSITY OF ALASKA ANCHORAGE,<br><br>    Defendant. | Case No. _____ |

**COMPLAINT FOR DAMAGES**

COMES NOW Jessica Lamblez, by and through counsel, the Northern Justice Project, LLC, and alleges and requests relief as follows:

**INTRODUCTION**

1.      This lawsuit is about a female police officer, Jessica Lamblez, who is being retaliated against because she spoke up against sexual harassment and a hostile work environment in the University of Alaska Anchorage Police Department ("UAAPD"). This

Complaint for Damages
*Lamblez v. UAA*
Page 1 of 10

lawsuit is also about the abject failure of the University of Alaska to properly supervise and manage its police department.

## JURISIDCTION AND VENUE

2. This Court has jurisdiction in this action under AS 22.10.020(a) and (i).

3. Venue is proper in Anchorage under AS 22.10.30 and Civil Rule 3(c).

## PARTIES

4. Plaintiff Jessica Lamblez is a resident of Anchorage, Alaska. She is an employee of the Defendant.

5. Defendant University of Alaska Anchorage ("UAA" or the "University") is one of the accredited universities operated by the University of Alaska. The University of Alaska a public corporation established under the Alaska Constitution and is governed by its Board of Regents. The University employed Jessica Lamblez as a police officer.

## GENERAL ALLEGATIONS

6. Officer Jessica Lamblez received a Bachelor's Degree in Criminal Justice and became a certified police officer in 2009. In 2013, Officer Lamblez became a certified Sexual Assault Investigator and has spent the last decade investigating sex crimes. She joined the UAAPD in August 2022.

7. Officer Lamblez was the only female officer at many of her prior departments. She is accustomed to working in a mostly male police force, but she has never witnessed a male colleague be inappropriate or derogatory to women until she joined the UAAPD.

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

Complaint for Damages
*Lamblez v. UAA*
Page 2 of 10

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

8.     Almost immediately after starting at UAAPD, Officer Lamblez saw that her colleague, Officer Christian Chiavetta, disrespected and harassed women—and especially Alaska Native women. On one of their first calls together, Officer Lamblez witnessed Chiavetta yell at an intoxicated Alaska Native woman that she was a "bitch" and a "fucking dumb cunt." Chiavetta also showed Officer Lamblez a video of him punching an intoxicated Alaska Native woman while on duty, then stated that it was "lucky she was so drunk because she doesn't remember me punching her." Officer Lamblez later learned this woman was a student at the University and had been a victim of an assault. On another call, Chiavetta instructed Officer Lamblez to turn off her body camera if they encountered a suspect. She ignored this instruction.

9.     In addition to assaulting women in the public, Chiavetta harassed his female colleagues at UAAPD. He would frequently rant to his female colleagues, including Officer Lamblez, that his ex-wife was a "fucking bitch" or "cunt" and that his daughter was turning into a "fucking bitch just like her mother." He would talk about when he lived overseas and would hire sex workers, joking that he never knew if they were minors or if they were boys or girls.

10.     At one point, Chiavetta showed Officer Lamblez a degrading video of two little people oil wrestling in bikinis. Officer Lamblez told him that she did not want to see that, and Chiavetta then tried to show her another video of the same type of content. Officer Lamblez told him that this was extremely inappropriate, especially because Chiavetta knew that her daughter was a little person and had passed away.

Complaint for Damages
*Lamblez v. UAA*
Page 3 of 10

11. Sometime in early 2023, a younger female dispatcher at UAAPD disclosed to Officer Lamblez how she felt unsafe around Chiavetta because of his sexually harassing and demeaning conduct. When Officer Lamblez asked the dispatcher if she wanted to report Chiavetta's misconduct to the University, the dispatcher was reluctant because Chiavetta was a close and personal friend of UAAPD Chief of Police, Jeff Earle. The dispatcher explained that she was about to ask Chief Earle for a change in her schedule, and she did not want Chief Earle to deny the request in retaliation because she spoke up about Chiavetta.

12. Indeed, it was widely known at UAAPD that Chief Earle had a close relationship with Chiavetta. Officers in the UAAPD understood that Chief Earle would not take any action against Chiavetta and would protect him from any discipline.

13. But Chiavetta soon applied to become a Sergeant. Officer Lamblez knew that she had to say something because she did not want a sexual harasser to be in a position of power at the UAAPD. In August or September 2023, Officer Lamblez reported Chiavetta's sexual harassment and misconduct to Chief Earle. Officer Lamblez explained that Chiavetta should not become a Sergeant because he was abusive and disrespectful to women. But if Chief Earle did decide to promote him, Officer Lamblez requested that Chiavetta not be assigned as her supervisor because of the sexual harassment.

14. Neither Chief Earle nor the University took any action to stop Chiavetta's harassment. To the contrary, in October 2023, Chief Earle promoted Chiavetta to Sergeant and explicitly assigned him to be Officer Lamblez's supervisor.

Complaint for Damages
*Lamblez v. UAA*
Page 4 of 10

15. On March 3, 2024, Officer Lamblez again told Chief Earle about Chiavetta's misconduct and sexual harassment. A few days later, she spoke with the University's Human Resources, both about Chiavetta's misconduct and concerns among UAAPD officers that they could not talk to Chief Earle about Chiavetta without fear of retaliation. Still, the University did nothing.

16. That was the last straw for Officer Lamblez. She and another UAAPD officer filed a formal complaint about Chiavetta with the University's Office of Equity and Compliance. The Office of Equity and Compliance initiated an investigation into the allegations of sexual harassment.

17. During the investigation, neither Chief Earle nor the University took any proactive measures to ensure the female complainants were safe. Chiavetta still had his badge, his gun, his credentials, and his keys to the office. Chiavetta would frequently show up at the department and continued to work on cases with Chief Earle. Female officers were forced to interact with their sexual harasser, and Chiavetta still held a position of power within the UAAPD.

18. On July 12, 2024, the University sustained the allegations and found that Chiavetta engaged in sexual harassment and created a hostile work environment. Specifically, the investigation found that Chiavetta made pervasive and offensive comments about his sex tourism in Asia; that he made pervasive, offensive, and sexually vulgar comments about his ex-wife; that he frequently made comments about women's appearances and used vulgar terms to describe women; that he attempted to show

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

pornographic videos to female officers; and that overall, he created a hostile work environment.

19. Despite the investigation and its findings, Chief Earle continued to reward Chiavetta. For example, Chief Earle sent Chiavetta on a three-week training course in the Lower 48, then he moved Chiavetta to oversee all domestic and sexual assault investigations on the Mat-Su campus in Wasilla. Chiavetta still continued to be in charge of the Field Training Officer ("FTO") program for all UAAPD new hires and continued to approve all officer training requests.

20. Chief Earle apparently did not appreciate that Officer Lamblez had filed a complaint against Chiavetta, his close friend. In the wake of Officer Lamblez's complaint, Chief Earle began a classic office freeze out and effectively stopped speaking to Officer Lamblez. He assigned Officer Lamblez to solo shifts over a year, including approximately nine months of solo night shifts. Assigning an officer to a solo night shift is a huge safety concern and is not a regular practice at UAAPD, especially when the assignment lasts for months on end.

21. Chief Earle also stripped Officer Lamblez of her training duties. Before filing the complaint, Officer Lamblez had been a Field Training Officer (FTO) who trained new hires. Prior to the complaint, she was praised for her work and told that she would be the main field trainer for all new officers. Since the complaint, Chief Earle stopped asking her to be an FTO. Most recently, Chief Earle asked the newest hire—a male officer who Officer

Complaint for Damages
*Lamblez v. UAA*
Page 6 of 10

Lambelz had trained just one year earlier—to take over as the FTO and sent him to training so that he could take over that role.

22. Chief Earle also retaliatorily denied Officer Lamblez training opportunities. For example, in April 2024, when Officer Lamblez applied to take a Glock Armour training course in Fairbanks, Chief Earle denied the request and told Officer Lamblez that the UAAPD could not afford it. Shortly afterwards, a different male officer was approved for the same Glock Armour course, and another male officer was sent to the Lower 48 for a week-long training.

23. In June 2024, Officer Lamblez called the University's human resources and reported that Chief Earle was retaliating against her. Despite Officer Lamblez warning the University in March 2024 that Chief Earle would retaliate and then reporting the retaliation in June 2024, the University did nothing.

24. In February 2025, Officer Lamblez filed a complaint with the Equal Employment Opportunity Commission and the Alaska Human Rights Commission regarding the retaliation from Chief Earle.

25. Less than one month later, on March 6, 2025, Chief Earle gave Officer Lamblez a letter regarding his "expectations" within the UAAPD. The letter contained false information and targeted Officer Lamblez for things that other officers did without issue, such as keeping empty file folders on their desks. Officer Lamblez explained to the University's Human Resources that the letter was inaccurate and that she felt it was retaliatory for complaining about Chiavetta.

26. Again, the University took no action. Officer Lamblez began developing an anxiety disorder and lost significant weight due to the stress and fear that Chief Earle was actively trying to fire her for speaking out against his friend, Chiavetta.

27. Unfortunately, Officer Lamblez's fears came true. In October 2025, Chief Earle placed Officer Lamblez on administrative leave for allegedly mishandling a sexual assault investigation. In accord with his retaliatory animus, Chief Earle did not place Officer Lamblez's male partner on leave, even though he was the first responding officer on scene and thus handling the at-issue investigation.

28. Chief Earle's actions are directly related to Officer Lamblez's complaint against Chiavetta. As a matter of fact, he has been fishing for any possible information to try to fire Officer Lamblez. For example, in September 2024, Officer Lamblez gave a campus security officer a ride to the police department. Chief Earle saw the two women talking in Officer Lamblez's car when they arrived at the department. Chief Earle approached the security officer and demanded to know what she and Officer Lamblez had been talking about. He told the security officer that Officer Lamblez "makes things up about people" and that she should not be trusted. He encouraged the security officer to report anything she heard about Officer Lamblez to him directly. The security officer told Officer Lamblez about this conversation because it was apparent that Chief Earle was trying to find any reason to fire her.

29. Chief Earle's retaliatory animus is not a secret. Prior to the complaint, Chief Earle would assign a Sergeant to oversee the UAAPD when he was traveling or unavailable.

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

The assignment rotated among the three Sergeants. After the investigation, Chief Earle refused to allow one of the Sergeants to oversee the UAAPD. This Sergeant had submitted a sworn statement about Chiavetta's misconduct. When this Sergeant asked Chief Earle why he was stripped of this duty, Chief Earle told him—unambiguously—that it was because he participated in the investigation against Chiavetta.

30. Since complaining about the sexual harassment, Officer Lamblez is in constant fear of losing her job. She was diagnosed with anxiety disorder and developed constant migraines. She has lost 10 pounds due to the stress of retaliation and fear that Chief Earle will destroy her career for reporting his friend for sexual harassment.

31. Moreover, the retaliation has affected the duties and benefits of her job: she was forced to work solo night shifts, received discipline, and lost training opportunities, all because she had the audacity to report sexual harassment against the Chief's friend.

32. The University knew of Chiavetta's misconduct and now knows of Chief Earle's retaliation, but it has done absolutely nothing to protect Officer Lamblez.

### FIRST CAUSE OF ACTION:
### VIOLATION OF THE ALASKA HUMAN RIGHTS ACT, AS 18.80.220

33. Plaintiff incorporates the above paragraphs.

34. The Alaska Human Rights Act prohibits employers from retaliating against their employees for reporting sexual harassment.

35. Officer Lamblez participated in a protected activity, i.e., complaining about Chiavetta's rampant sexual harassment at the UAAPD.

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

36. The University, through Chief Earle, retaliated against Officer Lamblez because of her complaint about Chiavetta's sexual harassment.

37. The University has known about the retaliation since June 2024, but it has done nothing to stop it.

38. Officer Lamblez is entitled to actual and compensatory damages against the University.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests:

(1) Actual and compensatory damages;

(2) A declaration that Defendant's conduct was illegal;

(3) Attorney's fees and costs;

(4) Other relief this Court deems necessary.

DATED this 12th day of February, 2026, at Anchorage, Alaska.

NORTHERN JUSTICE PROJECT, LLC
Attorneys for Plaintiff

By: /s/ James J. Davis, Jr.
James J. Davis, Jr., AK Bar No. 9412140

Case 3:26-cv-00115-ACP     Document 1-2     Filed 03/12/26     Page 10 of 10

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645